United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EARTH ISLAND INSTITUTE, et al.,
Plaintiffs,

v.

TOM QUINN, et al.,
Defendants.

Case No. 14-cv-03101-JST

**ORDER DENYING MOTION TO SEVER AND GRANTING MOTION TO TRANSFER VENUE**

Re: ECF No. 9

## I. INTRODUCTION

Defendants Tom Quinn, supervisor for the Tahoe National Forest, Dean Gould, supervisor for the Sierra National Forest, and the United States Forest Service ("USFS") (collectively, "Defendants") move to sever the claims in this action and to transfer venue to the Eastern District of California. Federal Defendants' Motion to Server Claims and Transfer Venue and Memorandum of Law in Support Thereof ("Mot."), ECF No. 9.

The Court will grant the motion to transfer, and allow the motion to sever to be decided by the transferee court in the exercise of its case management authority.

## II. BACKGROUND

### A. Factual Background

In July 2013, the Aspen fire burned approximately 22,300 acres of the Sierra National Forest within Fresno County in the Eastern District of California. Complaint for Declaratory and Injunctive Relief ("Complaint"), ¶ 30[1]; Environmental Assessment: Aspen Recovery and Reforestry Project ("Aspen EA") at 6 *Exh. A to Mot., ECF No. 9-2). In August 2013, the American fire burned approximately 22-28,000 acres of the Tahoe National Forest, within Placer

[1] All "¶" citations are to the Complaint.

United States District Court
Northern District of California

County, also in the Eastern District of California. Complaint, ¶ 25; Environmental Assessment: Big Hope Fire Salvage and Restoration Project ("Big Hope EA") at 6 (Exh. C to Mot., ECF No. 12).

Between November 2013 and June 2014, the Tahoe National Forest engaged in a public process, including the preparation of an Environmental Assessment ("EA") pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq*, to approve the Big Hope Fire Salvage and Restoration Project ("Big Hope Project"). ¶¶ 2, 27-28. In the Big Hope Project, the Tahoe National Forest proposes to conduct salvage harvest of fire-killed trees, remove hazardous trees, and engage in tree planting in areas affected by the American fire. Big Hope EA, at 8. The purpose of the project is to recover the economic value of fire-killed trees by allowing the local timber industry to harvest them, to reduce public safety hazards, to reduce the danger of suppressing future wildfires, and to re-establish forested conditions. Id. On June 26, 2014, Defendant Quinn signed a Decision Notice and Finding of No Significant Impact ("DN/FONSI") finally approving the Big Hope project. (Exh. D to Mot., ECF No. 13.) The EA was prepared, and the DN/FONSI was signed, in Placer and Nevada Counties, both within the Eastern District.

Also between November 2013 and June 2014, the Sierra National Forest engaged in a similar process to approve the Aspen Recovery and Reforestation Project ("Aspen Project"). ¶¶ 32-33. In the Aspen Project, the Sierra National Forest proposes to conduct "hazard tree removal" of dead trees, salvage timber harvest for sale to the local timber industry, plan and release new conifer seedlings, reopen or construct temporary roads, and engage in noxious weed eradications, with the area affected by the Aspen fire. Aspen EA, at 15. Defendant Gould finally approved a DN/FONSI for the Aspen Project on June 27, 2014. (Exh. B to Mot., ECF No. 11.) The EA was prepared, and the final DN/FONSI was signed, in Fresno County.

Plaintiff Earth Island Institute ("EII") is a nonprofit corporation headquartered in Alameda County within the Northern District of California. ¶ 7. Through its John Muir Project, EII participated in the process for public comment on the environmental review of the Aspen Project and the Big Hope Project (collectively, the "Projects"). ¶ 13. "John Muir Project offices are in San Bernardino County, California," which is within the Central District of California. ¶ 7.

United States District Court
Northern District of California

Plaintiff Center for Biological Diversity ("CBD") "is a non-profit corporation with offices in San Francisco, Los Angeles, and Joshua Tree, California; Nevada; Oregon; Washington; Arizona; New Mexico; Alaska; and Washington, D.C." ¶ 9. CBD also participated in the public comment process for the approval of both Projects. ¶ 13.

**B. Procedural History**

Plaintiffs EII and CBD (collectively, "Plaintiffs") filed suit against Defendants in this district on July 8, 2014. Plaintiffs allege that the Big Hope and Aspen EAs failed to properly analyze the Projects' potential impacts on habitat within the Big Hope and Aspen project areas that is used by California Spotted Owls, Black-backed Woodpeckers, and Pacific Fishers. ¶¶ 35, 37-51, 56-85. Plaintiffs bring causes of action through the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, to argue that these alleged failures violated NEPA and the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 *et seq.* In their prayer for relief, Plaintiffs ask the Court to:

> 1. Declare that Defendants violated NEPA, NFMA, the APA, and implementing regulations, in preparing and approving the Big Hope and Aspen Project EAs, Decision Notices, and FONSIs;
>
> 2. Enjoin Defendants from awarding or implementing the Projects, except for felling of hazard trees that could otherwise fall on and hit roads maintained for public use, trails or administrative structures, until Defendants have complied with NEPA, NFMA, the APA, and implementing regulations;
>
> 3. Award Plaintiffs their costs and attorneys fees under the Equal Access to Justice Act;
>
> and
>
> 4. Grant Plaintiffs such other and further relief as the Court deems just and equitable

Complaint, p. 29. In the portion of the Complaint addressing venue, Plaintiffs state:

> Venue in this Court is proper under 28 U.S.C §§ 1391 and 1392. Defendants are federal agency employees and a federal agency, and Plaintiff Earth Island Institute's primary place of business is in the Northern District of California. Plaintiff Center for Biological Diversity (CBD) has an office in San Francisco, within the Northern District, and CBD's counsel on this case is based in the Northern

United States District Court
Northern District of California

> District. The U.S. Forest Service's attorneys at the Office of General Counsel for Region 5 (California) are also in San Francisco, within the Northern District.[2] Venue therefore properly vests in this district.

¶ 6. On July 10, Defendants filed this motion to sever and transfer venue, noting "that they have conferred with Plaintiffs and understand that Plaintiffs will file a motion seeking a preliminary injunction forthwith." Mot. 1. Defendants sought "expedited resolution of this motion—and are willing to waive both oral argument and a reply brief—so that Plaintiffs' request for injunctive relief can be heard in the proper court." Id. After a telephonic case management conference with the Court on July 10, the parties stipulated to a briefing schedule in which Plaintiffs would file their motion for a preliminary injunction on July 15, and would oppose the present motion on Friday, July 18. ECF Nos. 16 & 17. The parties also stipulated to deadlines to further brief, and hear, the motion for a preliminary injunction such that the motion could be heard before Defendants intend to begin implementation of the two Projects, on August 1.

At Defendants' request, the Court took this motion under submission upon the filing of Plaintiffs' opposition brief.

**C. Jurisdiction**

Since all of Plaintiffs' causes of action arise under federal statutes, federal subject-matter jurisdiction is proper under 28 U.S.C. § 1331.

**D. Legal Standards**

**1. Motion to Sever**

"The court may . . . sever any claim against a party." Fed. R. Civ. Pro. 21. "The Court has broad discretion in determining whether to order severance under Rule 21." Maddox v. County of Sacramento, No. 2:06-cv-0072-GEB-EFB, 2006 WL 3201078, at *2 (E.D. Cal. Nov. 6, 2006).

**2. Motion to Transfer**

**a. Mandatory Transfer**

---

[2] In fact, the only attorneys to make an appearance in this action on behalf of Defendants list Washington, D.C. as their offices. But Plaintiffs do not base their opposition on the location of Defendants' counsel.

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C.A. § 1406(a).

"A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1).

Once the defendant has challenged the propriety of venue in a given court, the plaintiff bears the burden of showing that venue is proper. Omnicell, Inc. v. Medacist Solutions Grp., LLC, 272 F.R.D. 469, 472 (N.D. Cal. 2011) (citing Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979)).

A decision regarding the permissibility of venue under 28 U.S.C. § 1391 is reviewed *de novo*. Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010); Immigrant Assistance Project of the L.A. County Fed'n of Labor v. INS, 306 F.3d 842, 868 (9th Cir. 2002).

**b. Discretionary Transfer**

Even when venue is permissible in a given district, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The party moving to transfer venue under Section 1404(a) bears the burden of establishing the factors in favor of transfer. Jones v. GNC Franchising, Inc., 211 F.3d 495, 499 (9th Cir. 2000). "[T]he district court's decision to change venue is reviewed for abuse of discretion." Ventress v. Japan Airlines, 486 F.3d 1111, 1118 (9th Cir. 2007) (citing Posnanski v. Gibney, 421 F.3d 977, 978 (9th Cir. 2005)).

## III. ANALYSIS

Defendants move the court to sever this action into cases, one challenging the Aspen project and the other challenging the Big Hope project. Defendants also move to transfer the action to the Eastern District of California. The Court addresses the second request for relief, but will forebear addressing the first, so as not to tie the hands of the transferee court as to an important question of case management.

**A. Motion to Transfer**

Defendants argue that this action must be transferred pursuant to 28 U.S.C. §1406(a) because venue is improper in this district under 28 U.S.C. § 1391(e). In the alternative, Defendants argue that even if venue were permissible in this district, the court should exercise its discretion to transfer the case to the Eastern District pursuant to 28 U.S.C. § 1404(a).

**1. Proper Venue**

Plaintiffs do not argue that any "defendant in the action resides" in this district, 28 U.S.C. § 1391(e)(1)(A), and neither do they argue that "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" in the district, 28 U.S.C. § 1391(e)(1)(B). Therefore, the only route open to proper venue is 28 U.S.C. § 1391(e)(1)(C), which allows venue where "the plaintiff resides if no real property is involved in the action." It is undisputed that at least one Plaintiff resides in this district, but the parties dispute whether "real property is involved in the action."

Defendants argue that "Plaintiffs' allegations focus on the impact that the commercial harvest of timber—the sole activity they challenge in this case —has on the land on which it occurs." ECF No. 9 at 7. Plaintiffs argue that the case involves timber sales on national forest lands, which are "personal property" as opposed to "real property," and that in any event, 28 U.S.C. § 1391(e)(1) applies only to cases in which the action largely centers on a property right, which is not the circumstance here. ECF No. 21 at 2.

"The Ninth Circuit has not addressed the meaning of 'real property' in § 1391(e)(3)." Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt. ("CBD v. USBLM"), No. 08-cv-05646 JSW, 2009 WL 1025606, at *2 (N.D. Cal. Apr. 14, 2009). But by using the legal term "real property," rather than allowing venue whenever "the action relates a particular area of land,"

Congress seems to have indicated that it intended mainly to cover disputes over legal interests in real property. As one district court cleverly observed, when analyzing § 1391(e)(1)(C)'s predecessor statute § 1391(e)(4):

> Gravity being what it is, the vast bulk of human activities take place on the face of the earth. Consequently, almost any dispute over public or private decisions will in some way "involve real property," taken literally. The touchstone for applying § 1391(e)(4) cannot sensibly be whether real property is marginally affected by the case at issue. Rather, the action must center directly on the real property, as with actions concerning the right, title or interest in real property.

Natural Res. Def. Council, Inc. v. Tennessee Val. Auth. ("NRDC v. TVA"), 340 F. Supp. 400, 406 (S.D.N.Y. 1971) (Motley, J.), rev'd on other grounds, 459 F.2d 255 (2d Cir. 1972).[3] Most authority appears to have followed that logic, generally finding that actions "involve real property" when they involve disputes over real property interests -- and perhaps not even then if the real property dispute is peripheral to the central cause of action. See Wright, Miller & Cooper, 14D Fed. Prac. & Proc. Juris. § 3815, n. 33 (4th ed.) (citing cases); accord Animal Legal Def. Fund v. U.S. Dep't of Agric., No. 12-cv-4407-SC, 2013 WL 120185, at *2 (N.D. Cal. Jan. 8, 2013) (venue permissible since "[n]o title, interest, or possession of real property would be affected if this case were resolved on the merits, even though the case involves facts derived from real property").

Despite the fact that the present action does not involve any dispute over real property interests, Defendants argue that "Plaintiffs' case unquestionably 'involves real property'" because Plaintiffs' complaint focuses on the Projects' impacts on a particular area of land. Mot. 7. But neither of the two cases cited by Defendants stand for that proposition. Ferguson v. Lieurance, followed NRDC v. TVA, and noted that the plaintiff in the case "seeks" to "acquire . . . [a] real property interest." 565 F. Supp. 1013, 1015 (D. Nev. 1983). CBD v. BLM, in turn, followed both Ferguson and NRDC v. TVA, and noted that the federal plan challenged in that case involved "rights of way and easements across . . . lands, land withdrawals, and land exchanges and acquisitions." 2009 WL 1025606, at *1.

---

[3] The Second Circuit reversed on the ground that the "federal officer" venue provision did not apply to the "essentially local federal agency" that was defendant in that case. 459 F.2d at 259.

Perhaps as the case law develops, it will become clear that "actions concerning the right, title or interest in real property" are not the *only* kinds of actions that "center directly on . . . real property." NRDC v. TVA, 340 F. Supp. 400 at 406. But Defendants have cited no authority finding venue improper under 28 U.S.C. § 1391(e)(1)(C) in a case that did *not* involve a legal dispute over real property interests, and the Court sees no reason on these facts why it should be the first to limit plaintiffs' venue options. "Section 1391(e) . . . was intended to liberalize the venue requirements" and "should be interpreted to effectuate this objective." Envtl. Def. Fund, Inc. v. Corps of Engineers of U. S. Army, 325 F. Supp. 728, 732 supplemented, 325 F. Supp. 749 (E.D. Ark. 1971), aff'd, 470 F.2d 289 (8th Cir. 1972). While this case relates to a specific area of land, see *infra* at III-A-2, it also involves personal property interests in timber and regulatory and environmental policy issues.

Therefore, the court finds that Plaintiffs have met their burden to demonstrate that venue is permissible in this district, since Plaintiffs reside in this district and the action does not "involve real property" within the meaning of 28 U.S.C. § 1391(e)(1)(C).

**2. Discretionary Transfer**

Defendants also move for discretionary transfer under 28 U.S.C. § 1404(a). Under that section, the court must first determine whether the potential transferee district is one where the case could originally have been brought. 28 U.S.C. § 1404(a). The court then considers: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice. Id.

In considering Section 1404(a)'s discretionary factors -- "the convenience of parties and witnesses," and "the interest of justice" -- courts undertake an "individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). As additional factors, "the court may consider (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8)

the ease of access to sources of proof." Jones, 211 F.3d at 498-99. "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." Park v. Dole Fresh Vegetables, Inc., 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013) (citations omitted).

Turning to these factors here, it is undisputed that this action could have been brought in the Eastern District, since Defendants reside there, a substantial part of the events or omissions giving rise to the claim occurred in the district, and all of the property that is the subject of the action is situated there. Moreover, many of the Jones factors are not relevant to this action. No party has cited significant "differences in the costs of litigation in the two forums," for example, and the availability of witnesses and proof is unlikely to be a factor in a NEPA record review case, since the relevant agency action will be reviewed on a paper record. Both districts are in the State of California, and in any case, since the action involves federal law, neither district is more "familiar with the governing law."

That leaves four relevant Jones factors, which the Court now analyzes.

**a. The Location where the Relevant Agreements were Negotiated and Executed**

All of the agreements were executed in the Eastern District of California. This factor weighs in favor of transfer.

**b. Plaintiffs' Choice of Forum**

Since Plaintiffs have chosen this district to file their suit, this factor weighs against transfer.

**c. The Parties' Contacts with the Forum**

Plaintiff EII has significant contacts with this forum, since it is the location where the organization is headquartered. Although Plaintiff CBD does not claim to be headquartered in the Northern District, it maintains an office here. Neither Plaintiff maintains offices in the Eastern District.

But while Plaintiffs have stronger contacts to the Northern District, Plaintiffs do have significant relevant contacts with the Eastern District. Both parties involved themselves in the

public review of the Big Hope and Aspen projects' public review process. Both Plaintiffs regularly file suit in the Eastern District to bring environmental challenges to government projects occurring there. While the Court understands that it may be more convenient for Plaintiffs to bring suit in a district in which they maintain an office, neither party can claim to lack any relevant contacts with the transferee district.

All of Defendants' relevant contacts, on the other hand, are with the Eastern District. Defendants Quinn and Gould, sued in their professional capacity as supervisors of National Forests contained entirely within the Eastern District, only have contacts with the Eastern District and have none with the Northern. Defendant USFS presumably has the same level of contact with the Northern District that it does to any other judicial district that contains national forestland. But in this action, the only relevant contacts are to two national forests within the Eastern District. Moreover, the USFS's regional headquarters for the Pacific Southwestern region is also in the Eastern District.

This factor favors transfer.

**d. The Contacts relating the Plaintiffs' Cause of Action in the Chosen Forum**

While *Plaintiffs* have some connection to this district, as previously discussed, their *claims* do not, and their few arguments to the contrary are unpersuasive. Plaintiffs argue that "this District has a strong interest in federal agency compliance with the National Environmental Policy Act, the National Forest Management Act, and the Administrative Procedures Act" and that the district "has as an interest in whether the United States Forest Service is making land management decisions which are informed by the most recent science and whether they are fully disclosing the impacts of proposed timber harvest to the public at large." Plaintiffs' Opposition to Defendants' Motion to Sever Claims and Transfer Venue, at 9 (ECF No. 21). This is true so far as it goes – this district does have an interest in whether the Forest Service follows the law. But our interest is no stronger than that of any other district.

Plaintiffs seek to enjoin activity that will occur entirely within the Eastern District. Plaintiffs' complaint focuses almost entirely on the damage the Projects will have on wildlife

United States District Court
Northern District of California

habitat in specific locations in the Eastern District. On the other side of the bar, Defendants purposes in proceeding with the Projects – to restore forestland, manage wildfires, and protect public safety – have significant localized impacts felt first in the Eastern District and only secondarily in other venues.

To be sure, this action involves many impacts and issues that transcend the Eastern District. But those impacts are regional in scope, and Plaintiffs have not identified any way in which they relate specifically to the Northern District more than they do any other district. On the other hand, the project certainly involves local issues. And those issues are specific to the Eastern District.

This factor also favors transfer.

**e. Weighing the Factors**

Since the only factor weighing against transfer is Plaintiffs' choice of forum, Plaintiff leans heavily on the argument that "great weight is generally accorded plaintiff's choice of forum." Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987); see also Gherebi v. Bush, 352 F.3d 1278, 1303 (9th Cir. 2003), vacated on other grounds, 542 U.S. 952 (2004) ("there is a strong presumption in favor of the plaintiff's choice of forum").

Defendants counter that "the degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence or where the forum chosen lacks a significant connection to the activities alleged in the complaint." Fabus Corp. v. Asiana Exp. Corp., No. 00-cv-3172 PJH, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001). See also Wright, Miller & Cooper, 15 Fed. Prac. & Proc. Juris. § 3848 (4th ed.) ("The plaintiff's preference may also be given less weight if the plaintiff sued in a district that has no obvious connection to the case . . . although not universally followed, this approach is one of sound judicial administration and reflects good common sense").

Plaintiffs correctly point out that under Ninth Circuit authority, the court only affords "minimal" consideration to the plaintiff's choice of forum when "the operative facts have not occurred within the forum *and* the forum has no interest in the parties or subject matter." Lou, 834 F.2d at 739 (emphasis added) (citing Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954

(9th Cir. 1968)). Therefore, they argue, whether or not the forum has any connection to the case, it at least has a connection to the Plaintiffs, and therefore the Plaintiffs' choice of forum should be respected.

But the level of deference to plaintiff's choice of forum is not a black-and-white proposition. Perhaps Plaintiffs' choice of forum should not be afforded the "minimal" consideration it would receive if no parties had any connection to the transferee district. But the level of deference to plaintiff's choice of forum cannot be dispositive when the action itself has no other relevant connection to the transferee forum.

As "in most environmental cases, the issue of which federal district should adjudicate the issues is determined by weighing a plaintiff's choice of forum against the competing interest in 'having localized controversies decided at home.'" Ctr. for Biological Diversity v. Kempthorne ("CBD v. Kempthorne"), No. 07-0894 EDL, 2007 WL 2023515, at *5 (N.D. Cal. July 12, 2007) (quoting Piper Aircraft v. Reyno, 454 U.S. 235, 241, n. 6 (1981)); see also Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.) ("An additional reason for litigating in the forum that encompasses the locus of operative facts is the local interest in having local controversies resolved at home, especially in environmental cases or other matters involving land or matters of local policy").

Defendants cite several opinions from this district alone in which courts have granted motions to transfer in similar situations. See Sierra Forest Legacy v. Weingardt, No. 4:07-cv-02646 SBA, ECF No. 28 (N.D. Cal. Oct. 17, 2007) (not available on Westlaw); Sierra Club v. U.S. Dep't of State, No. 09-cv-04086 SI, 2009 WL 3112102, at *3-5 (N.D. Cal. Sep. 23, 2009); CBD v. Kempthorne, 2007 WL 2023515, at *6. And Defendants cite numerous other similar cases decided similarly by courts of other districts. See, e.g., Nat'l Wildlife Fed'n v. Harvey, 437 F. Supp. 2d 42, 46-50 (D.D.C. 2006). Plaintiffs point out distinctions – some more significant than others -- between those cases and this one. But they cite only a single case, Sierra Club v. Antwerp, 523 F.Supp.2d 5, 13 (D.D.C. 2007), in which a district court denied a motion to transfer under § 1404(a). But Sierra Club involved five different federal government defendants headquartered in Washington, D.C., who could hardly complain that they lacked relevant contacts

to D.C.'s judicial district. In any case, the Court is more persuaded by the analyses of the many courts who have granted motions to transfer.

Plaintiffs object that Defendants' argument -- that actions centering around projects occurring on a specific area of land should generally be transferred to the district where the action occurs -- would "essentially utilize 28 U.S.C. § 1406 to eviscerate 28 U.S.C. § 1391(e)(1)(C) from the venue statute." Opp., at 11. The Court does not agree that this is a likely result. Section 1391's venue provisions provide broad options to plaintiffs, but those options are nonetheless circumscribed to the extent defendants can make meritorious arguments for discretionary transfer. There are many types of government actions subject to U.S.C. § 1391(e)(1)(C)'s venue provision, and not all of those actions will center around a specific area of land in another judicial district that is the location of all of defendants' relevant contacts, and to which plaintiffs also have significant contacts. Other cases also may present a greater danger of prejudice or substantial inconvenience to a plaintiff whose ability to litigate is hampered by transfer outside of its home forum.[4]

In any case, a contrary hypothetical suggests itself. If Plaintiff CBD had chosen, for reasons of convenience, to bring suit in New Mexico or Alaska, where it also maintains offices, it is hard to imagine that its contacts with the transferee district would, by themselves, obstruct a motion to transfer. The Court strongly suspects that, even though § 1391(e)(1)(C) would permit Plaintiff CBD to lay venue in those districts, those courts would almost certainly grant a motion transfer the case to the district where the challenged action will take place. The Northern District of California may be closer to the Eastern District than the courts in New Mexico or Alaska, but the analysis is the same, even accounting for the coincidence of proximity.

Plaintiffs chose this forum because of their legitimate connection to it. Section 1391 permits them to bring this action here, where it would remain if no objection were made to the plaintiff's choice of venue. But Plaintiffs also have connections to the transferee forum, which is

[4] In noting that Defendants would suffer no inconvenience from being forced to litigate in a neighboring judicial district, Plaintiffs argue that "Defendants never actually argue that this forum is inconvenient, probably because it is not. In the age of technology and electronic filing the flow of information is essentially boundless, and, given that this is a record review case, it is extremely unlikely that live witnesses will be called." Opp., at 13.

the only district with significant relevant contacts to the Defendants, to the cause of action, and to the underlying operative facts. The Court concludes that Defendants have met their burden of demonstrating that the "interests of justice" warrant transfer.

**B. Motion to Sever**

Having concluded that this action should, and will, be heard by the Eastern District, this Court will not make discretionary case management decisions on behalf of that court. Therefore, Defendants' motion to sever is DENIED without prejudice toward renewal in the Eastern District.

## IV. CONCLUSION

Defendants' motion to transfer is GRANTED and Defendants' motion to sever is DENIED. The Clerk shall immediately transfer this action to the Eastern District of California.

**IT IS SO ORDERED.**

Dated: July 21, 2014

JON S. TIGAR
United States District Judge